**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 13-1311**

───────────────────────────────────────────

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

─────────────────────────

NATURAL RESOURCES DEFENSE COUNCIL, INC.

Petitioner,

v.

UNITED STATES OF AMERICA AND
NUCLEAR REGULATORY COMMISSION,

Respondents.

─────────────────────────

PETITION FOR REVIEW OF FINAL ORDER OF THE UNITED STATES
NUCLEAR REGULATORY COMMISSION

─────────────────────────

**INITIAL OPENING BRIEF FOR PETITIONER
NATURAL RESOURCES DEFENSE COUNCIL, INC.**

─────────────────────────

Geoffrey H. Fettus
Natural Resources Defense Council, Inc.
1152 15th Street, NW, Suite 300
Washington, D.C. 20005
(202) 289-2371

Howard M. Crystal
Eric R. Glitzenstein
MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., N.W., Suite 700
Washington, D.C.   20009
(202) 588-5206
(202) 588-5049 (facsimile)

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES, AND RULE 26.1 DISCLOSURE

Pursuant to D.C. Circuit Rules 15(c)(3), 26.1 and 28(a)(1), counsel for

Petitioner certifies as follows:

**1.      Parties, Intervenors, and Amici Curiae**

The parties to this Petition for Review are petitioner Natural

Resources Defense Council, Inc. ("NRDC") on behalf of its members, and

respondents United States Nuclear Regulatory Commission ("NRC") and the

United States of America.  Exelon Generation Company, LLC has intervened.

**RULE 26.1 DISCLOSURE STATEMENT**

Petitioner NRDC is a non-profit environmental advocacy organization.  It

has no parent corporation and issues no stock or shares.

**2.      Ruling Under Review**

Petitioner NRDC seeks review of the NRC's October 31, 2013

Memorandum and Order in *Exelon Generation Co.* (Limerick Generating Station,

Units 1 and 2), CLI-13-07, 78 N.R.C.__, 2013 WL 5872241 (Oct. 31, 2013).

**3.      Related Cases**

Petitioner is unaware of any related cases.

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

GLOSSARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATUTES AND REGULATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    Statutory And Regulatory Framework . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    The Atomic Energy Act and The Hobbs Act . . . . . . . . . . . . . 5

        2.    The National Environmental Policy Act . . . . . . . . . . . . . . . . 7

        3.    Relevant Commission Regulations . . . . . . . . . . . . . . . . . . . . 9

            a.    The Commission's NEPA Framework For
                    Relicensing Nuclear Power Plants . . . . . . . . . . . . . . . . 9

            b.    The Commission's Hearing Procedures . . . . . . . . . . . 11

    B.    Factual And Procedural Background . . . . . . . . . . . . . . . . . . . . . . . 14

        1.    The Commission's Consideration of SAMAs In
            Connection With Limerick's Original Operating License . . 14

        2.    The Commissions' Denial of NRDC's Request For A Hearing
            On SAMA Contentions In Connection With Relicensing The
            Limerick Plant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       a.     The Board's Decision Granting NRDC's Hearing Request . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       b.     The Commission's Decision That SAMA Contentions For Limerick's Relicensing Are Only Admissible Through Waiver of Commission Regulations, And Denial Of NRDC's Waiver Petition . . . . . . . . . . . . . 19

    3.    The Commission's Separate Decision To Hold All Waste Confidence Contentions In Abeyance . . . . . . . . . . . . . . . . . . 22

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

STANDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

I.     THE COURT HAS JURISDICTION OVER NRDC'S PETITION . . . . . 27

    A.    This Petition Falls Within An Exception To The General Rule Limiting Hobbs Act Review To Final Orders Granting Or Denying A License . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    B.    The Commission's Efforts To Defeat This Court's Jurisdiction Must Fail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

II.    THE COMMISSION ERRED IN CONCLUDING THAT CONTENTIONS RAISING NEW AND SIGNIFICANT INFORMATION CONCERNING SAMAS ARE PROHIBITED IN THE LIMERICK RELICENSING PROCEEDING . . . . . . . . . . . . . . . 31

    A.    The Commission Erred In Determining That Its Regulatory Scheme Precludes NRDC From Pursuing SAMA Contentions Without Obtaining A Regulatory "Waiver" . . . . . . . . . . . . . . . . . . . . . . . . 33

ii

1.    A Hearing Must Be Provided For New And Significant SAMA-Related Issues, Which The Commission Concurs Are Material To The Relicensing Decision . . . . . . . . . . . . . . 33

2.    The Commission's Regulations Do Not Bar The Hearing NRDC Seeks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

B.    If A Regulatory Waiver Is Required For NRDC To Pursue SAMA Contentions, The Commission Erred In Denying The Waiver . . . . . 44

1.    NRDC Satisfies The Criteria For A Waiver . . . . . . . . . . . . . . 46

2.    The Commission Erred In Concluding That NRDC's Waiver Request Was Not Sufficiently "Unique" To The Limerick Facility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                  **PAGE**

*Adams Fruit Co. v. Barrett*,
  494 US 638 (1990) ....................................................................32

*\*Alaska v. FERC,*
  980 F.2d 761 (D.C. Cir. 1992).................................... 2, 5, 6, 7, 23, 28

*Am. Bird Conservancy, Inc. v. FCC*,
  516 F.3d 1027 (D.C. Cir. 2008)............................................49

*Ark Initiative v. Tidwell*,
  749 F.3d 1071 (D.C. Cir. 2014)............................................25

*Auer v. Robbins,*
  519 U.S. 452 (1997) ....................................................43

*Baltimore Gas & Elec. Co. v. NRDC*,
  462 U.S. 87 (1983) ......................................................7

*Blue Ridge Envtl. Def. League v. NRC*,
  668 F.3d 747 (D.C. Cir. 2012)............................................29

*\*Calvert Cliffs' Coord. Comm. v. AEC,*
  449 F.2d 1109 (D.C. Cir. 1971) ............................... 31, 38, 43

*Carolina Envtl. Study Grp. v. United States*,
  510 F.2d 796 (D.C. Cir. 1975).............................................7

*City of Benton v. NRC*,
  136 F.3d 824 (D.C. Cir. 1998).............................................28

_____

*Authorities upon which we chiefly rely are marked with asterisks

iv

*City of Cleveland v. NRC*,
    68 F.3d 1361 (D.C. Cir. 1995)....................................................................... 30, 34

*City of Idaho Falls, Idaho v. FERC*,
    629 F.3d 222 (D.C. Cir. 2011)...........................................................................44

*City of Olmsted Falls, OH v. FAA*,
    292 F.3d 261 (D.C. Cir. 2002)............................................................................8

*Cmty. Broad. of Boston, Inc. v. FCC*,
    546 F.2d 1022 (D.C. Cir. 1976)................................................................. 28, 30

*Dearth v. Holder*,
    641 F.3d 499 (D.C. Cir. 2011)..........................................................................27

*Defenders of Wildlife v. Perciasepe*,
    714 F.3d 1317 (D.C. Cir. 2013)........................................................................26

*Dep't of Envtl. Quality v. EPA*,
    740 F.3d 185 (D.C. Cir. 2014)..........................................................................42

*Deukmejian v. NRC*,
    751 F.2d 1287 (D.C. Cir. 1984)................................................................... 8, 43

*Erie-Niagara Rail Steering Comm'n v. STB*,
    167 F.3d 111 (2d Cir. 1999) .............................................................................29

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*,
    528 U.S. 167 (2000) .........................................................................................26

_____

*Authorities upon which we chiefly rely are marked with asterisks

*Fund for Animals v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003).................................................................28

*\*Limerick Ecology Action, Inc. v. NRC,*
  869 F.2d 719 (3d Cir. 1989) ................................. 10, 13, 14, 15, 50, 51

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................... 25, 27

*Marsh v. Or. Natural Res. Council*,
  490 U.S. 360 (1989) ...................................................................7, 8

*Mass. v. United States,*
  522 F.3d 115, 131 (1st Cir. 2008) ......................................................29

*Murphy Exploration & Production Co. v. DOI*,
  252 F.3d 473 (D.C. Cir. 2001)...........................................................32

*National Assn of State Util. Consumer Advocates v. FCC*,
  457 F.3d 1238 (11th Cir. 2006)..........................................................29

*National Council of Resistance v. Dep't of State*,
  251 F.3d 192 (D.C. Cir. 2001)...........................................................44

*NetCoalition v. SEC*,
  715 F.3d 342 (D.C. Cir. 2013)...........................................................32

*New York v. NRC*,
  681 F.3d 471 (D.C. Cir. 2013)...................................................... 7, 22

*NRDC v. NRC,*
  680 F.2d 810 (D.C. Cir. 1982)...........................................................28

*Okla. Dep't of Envtl. Quality v. EPA*,
  740 F.3d 185 (D.C. Cir. 2014) ..........................................................43

_____
*Authorities upon which we chiefly rely are marked with asterisks

vi

*S. C. Loveland Co., Inc. v. United States,*
    534 F.2d 958 (D.C. Cir. 1976)..................................................................28

*Secretary of Labor, Mine Safety & Health Admin. v. Western Fuels-Utah, Inc.,*
    900 F.2d 318 (D.C. Cir. 1990).................................................................40

*Shays v. Fed. Election Comm'n,*
    414 F.3d 76 (D.C. Cir. 2005)..................................................................27

*Sierra Club v. EPA,*
    __ F.3d __ No. 08-1144, 2014 WL 2895930 (D.C. Cir. June 27, 2014) ...... 25, 26

*Sierra Club v. NRC,*
    862 F.2d 222 (9th Cir. 1988)..................................................................12

*Smoke v. Norton,*
    252 F.3d 468 (D.C. Cir. 2001).................................................................29

*Stinson v. United States,*
    508 U.S. 36 (1993) ............................................................................44

*Thermal Ecology Must Be Preserved v. AEC,*
    433 F.2d 524 (D.C. Cir. 1970)................................................................28

*\*Union of Concerned Scientists v. NRC ,*
    735 F.2d 1437 (D.C. Cir. 1984)......................................... 6, 25, 30, 35, 36, 37, 46

*Union of Concerned Scientists v. NRC,*
    950 F.2d 50, 54-56 (D.C. Cir. 1990) ..................................................... 25, 31, 38

*Venetian Casino Resort, LLC v. EEOC,*
    530 F.3d 925 (D.C. Cir. 2008)................................................................43

*Vt. Dep't of Pub. Serv. v. United States,*
    684 F.3d 149 (D.C. Cir. 2012)................................................................29

_____

*Authorities upon which we chiefly rely are marked with asterisks

*Water Transp. Ass'n v. ICC*,
  819 F.2d 1189 (D.C. Cir. 1987)..........................................................................30

**COMMISSION DECISIONS**

*Calvert Cliffs 3 Nuclear Project, LLC*,
  76 NRC 63 (2012) ........................................................................................23

*Carolina Power and Light Co.*,
  23 NRC 525 (1986) ......................................................................................12

*Dominion Nuclear Connecticut, Inc.*, CLI-05-24,
  62 NRC 551 (2005) ................................................................................. 47, 48

*Exelon Generation Co.*, CLI-12-19,
  76 NRC 377 (2012) ........................................................................................1

*In the Matter of Phil. Elec. Co.*,
  23 N.R.C. 125, 129 (1986) ...........................................................................14

*Progress Energy Florida, Inc.,*, LBP-11-01,
  73 NRC 19 (2011) ........................................................................................12

*Southern Nuclear Operating Co.*, LBP-08-2,
  67 NRC 54 ...................................................................................................12

**STATUTES**

5 U.S.C. § 702.....................................................................................................2

*28 U.S.C. § 2239(a) ...................................................................................... 6, 28

28 U.S.C. § 2239(b) ...................................................................................... 2, 31

28 U.S.C. § 2342.................................................................................................6

_____

*Authorities upon which we chiefly rely are marked with asterisks

28 U.S.C. § 2342(4) ........................................................................2

28 U.S.C. § 2344 ................................................... 2, 6, 27, 30

42 U.S.C. § 2011 .............................................................................3

42 U.S.C. § 2013(d) ................................................................ 6, 31

42 U.S.C. § 2133(c) .......................................................................5

42 U.S.C. § 2239 ................................................... 2, 4, 5, 6, 27, 31

42 U.S.C. § 4321 .........................................................................3, 4

42 U.S.C. § 4332(C)......................................................................7

## CODE OF FEDERAL REGULATIONS

10 C.F.R. § 1.15 .........................................................................13

10 C.F.R. § 2.309 ................................................................. 2, 4, 12

10 C.F.R.  § 2.309(c)...................................................................12

10 C.F.R. § 2.309(f) ......................................................... 12, 15, 18, 22

10 C.F.R. § 2.335(a)....................................................................12

10 C.F.R. § 2.335(b) ............................................... 4, 13, 18, 24, 45, 46, 47

10 C.F.R. § 51.20(b)(2)................................................................9

10 CFR § 51.23 .........................................................................22

*Authorities upon which we chiefly rely are marked with asterisks

10 C.F.R. § 51.45 ...................................................................9

10 C.F.R. § 51.53(c)(3)(ii)(L) ...................................... 10, 17, 18, 19, 21, 34, 39, 47

*10 C.F.R. § 51.53(c)(3)(iv) ........................................... 11, 16, 33, 41, 43

10 C.F.R. § 51.72(a) ................................................. 11, 32, 42

10 C.F.R. § 51.92(a)(2) ............................................... 11, 33, 42

10 C.F.R. § 51.95(c) .................................................. 9, 11, 33, 43

10 C.F.R. § 54.31 ......................................................5

50 C.F.R. § 1500.1 ....................................................43

*40 C.F.R. § 1502.9(c) ................................................8

_____

*Authorities upon which we chiefly rely are marked with asterisks

# GLOSSARY

| | |
|---|---|
| AEA | Atomic Energy Act |
| APA | Administrative Procedure Act |
| ASLB Or Board | Atomic Safety Licensing Board |
| CEQ | Council on Environmental Quality |
| DSEIS | Draft Supplemental Environmental Impact Statement |
| EIS | Environmental Impact Statement |
| ER | Environmental Report |
| Exelon | Exelon Generation Co. LLC |
| GEIS | Generic Environmental Impact Statement |
| IPE | Individual Plant Examinations |
| IPEE | Individual Plant Examinations of External Events |
| Limerick | Limerick Generating Station, Units 1 and 2 |
| NEPA | National Environmental Policy Act |
| NRC | Nuclear Regulatory Commission |
| NRDC | Natural Resources Defense Council |
| SAMAs | Severe Accident Mitigation Alternatives |
| SAMDAs | Severe Accident Mitigation Design Alternatives (same as SAMAs) |
| SEIS | Supplemental Environmental Impact Statement |

No. 13-1311

———————————————

**NOT YET SCHEDULED FOR ORAL ARGUMENT**
———————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
———————————————

NATURAL RESOURCES DEFENSE COUNCIL, INC.

Petitioner,

v.

UNITED STATES OF AMERICA AND
NUCLEAR REGULATORY COMMISSION,

Respondents.

———————————————

**INITIAL OPENING BRIEF OF PETITIONER**
———————————————

## STATEMENT OF JURISDICTION

Natural Resources Defense Council, Inc. ("NRDC") petitions for review of an

October 31, 2013 Order of the Nuclear Regulatory Commission's ("NRC" or

"Commission"), which denied NRDC's petition for a hearing in the relicensing

proceeding for the Limerick Generating Station nuclear power plant.

*Exelon Generation Co.* (Limerick Generating Station, Units 1 and 2), CLI-13-07, 78

N.R.C.__ (Oct. 31, 2013) ("Waiver Denial") (JA   ); *see also Exelon Generation Co.*

1

(Limerick Generating Station, Units 1 and 2), CLI-12-19, 76 N.R.C. 377 (Oct. 23, 2012) ("Waiver Decision") (JA ___).   The NRC Order is reviewable in this Court pursuant to 42 U.S.C. § 2239(b), 28 U.S.C. § 2342(4), 5 U.S.C. § 702, and Federal Appellate Rule 15.   The Petition for Review was filed December 24, 2013, and thus was timely presented under 28 U.S.C. § 2344.

## STATEMENT OF ISSUES

To participate in, and ultimately challenge, a Commission decision related to nuclear power plant relicensing, an applicant must timely intervene as a party before the NRC and obtain a hearing on admissible "contentions."   *See generally* 10 C.F.R. § 2.309.   If intervention is denied, the applicant is not a party, and thus may neither obtain a hearing before the NRC nor file a legal challenge once a final licensing decision is made.   *E.g.*, *Alaska v. FERC,* 980 F.2d 761, 763 (D.C. Cir. 1992).

In connection with the relicensing of the Limerick Generating Station, NRDC timely sought to intervene and obtain a hearing over the failure to consider new and significant information concerning Severe Accident Mitigation Alternatives ("SAMAs") – i.e., measures that may seriously diminish the otherwise catastrophic consequences of a severe nuclear accident at the facility, located near Philadelphia, Pennsylvania.   The Commission ruled that a hearing may only be obtained through

the "waiver" of NRC regulations, but denied NRDC's waiver request.   The issues
presented are:

1.      Whether the Commission erred in ruling NRDC may only obtain a
hearing through a waiver of Commission regulations, when the Commission does
not dispute that the issues raised are material to its relicensing decision.

2.      Whether the Commission erred in denying NRDC a waiver, when the
result precludes NRDC from administratively challenging, or ultimately obtaining
judicial review over, the adequacy of matters the Commission deems material to its
decision on relicensing.

## STATUTES AND REGULATIONS

The pertinent provisions of the Atomic Energy Act, 42 U.S.C. 2011, *et seq.*,
and implementing regulations, the Hobbs Act, 28 U.S.C. § 2341, *et seq.*, and the
National Environmental Policy Act, 42 U.S.C. 4321, *et seq.*, and pertinent
implementing regulations are set forth in the Addendum ("Add.").

## STATEMENT OF THE CASE

In June 2011, Exelon Generation Company, LLC ("Exelon") applied for a
renewed license for the Limerick Generating Station, Units 1 and 2 ("Limerick"),
located in Pennsylvania on the banks of the Schuylkill River, approximately four
miles from Pottstown and 35 miles from Philadelphia.   *See Exelon Generation Co.,*

*LLC* (Limerick Generating Station, Units 1 and 2), LBP-12-8, 75 N.R.C. 539, slip

op. at 2 (Apr. 4, 2012) ("First ASLB Op.") (JA   ).   The accompanying

Environmental Report ("ER") included a purported discussion of new information

concerning methods to mitigate against severe accidents – i.e., "SAMAs."   *See*

Environmental Report – Operating License Renewal Stage, Limerick Generating

Station, Units 1 and 2, Section 5.3 (June 2011) (ADAMS Accession No.

ML11179A104) (JA   ).

As authorized by 42 U.S.C. § 2239, and required by 10 C.F.R. §2.309, NRDC

filed an intervention motion and request for a hearing on several "contentions"

challenging that portion of the ER, arguing that new and significant information

concerning SAMAs was not considered as required by the National Environmental

Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq*., and implementing regulations.

The Atomic Safety and Licensing Board Panel ("ASLB" or "Board")

admitted NRDC's SAMA contentions, but on appeal the Commission reversed,

finding them barred by Commission regulations, and ruling that a "waiver" is

required.   However, when NRDC requested the waiver pursuant to 10 C.F.R. §

2.335(b), the Commission denied that motion, concluding that while new and

significant information related to SAMAs must be considered in the NEPA

process for relicensing, NRDC is not entitled to a hearing on the adequacy of that consideration.

In response to NRDC's Petition for Review in this Court, the Commission has argued the Petition is premature because other unrelated contentions *might* be adjudicated, none of which have been admitted during the relicensing proceeding, which is continuing.  *See* NRC Mot. To Dismiss (Feb. 10, 2014).  However, if NRDC does not become a party and obtain a hearing before the Commission, it will not only lose the right to raise these issues before the agency, as expressly contemplated by 42 U.S.C. § 2239, but it will also be barred from judicial review of the Commission's failure to consider new and significant information concerning SAMAs during the relicensing process.   *E.g., Alaska*, 980 F.2d at 763.

## STATEMENT OF FACTS

### A.    Statutory And Regulatory Framework

#### 1.    The Atomic Energy Act and The Hobbs Act

The Atomic Energy Act ("AEA") tasks the Commission with licensing the construction and operations of nuclear power plants, providing that an initial license may be issued for up to forty years, and may be thereafter renewed.   42 U.S.C. § 2133(c); *see also* 10 C.F.R. § 54.31.   As Congress explained, the Act's purpose is to, *inter alia*, "encourage widespread participation in the development and

5

utilization of atomic energy for peaceful purposes to the maximum extent consistent

with the common defense and security and with the health and safety of the public."

42 U.S.C. § 2013(d).   Accordingly, in creating a process for licensing nuclear

power plants, Congress provided that "the Commission *shall grant a hearing* upon

the request of any person whose interest may be affected by the proceeding, and

shall admit any such person as a party to such proceeding."   *Id.* § 2239(a)(1)(A)

(Add.-11) (emphasis added); *see also, e.g.*, *Union of Concerned Scientists v. NRC*

("*USC I*"), 735 F.2d 1437 (D.C. Cir. 1984) (ruling that a party is entitled to a hearing

on any issue material to the licensing decision).

 Congress further provided that the Commission's licensing decisions should

be subject to judicial review.   42 U.S.C. § 2239(b) (Add.-12).   That review is

governed by the APA standard of review, and is available under the Hobbs Act, 28

U.S.C. § 2341, *et seq.*, which provides this Court (and other courts of appeal in

certain circumstances) with exclusive jurisdiction over Commission Orders.   *Id.*

§§ 2342; 2343 (Add.-123, 124).   The Hobbs Act provides that "*[a]ny party*

*aggrieved* by the final order may, within 60 days after its entry, file a petition to

review the order in the court of appeals wherein venue lies."   *Id.* § 2344 (emphasis

added).   In turn, Circuit precedent dictates that a "party aggrieved" for the purposes

of seeking judicial review is limited to a "party" who has met the Commission's

6

strict "contention admissibility" requirements and thus been granted intervenor status in the Commission's *adjudicatory* proceeding.   *See, e.g.*, *Alaska*, 980 F.2d at 763.

## 2.      The National Environmental Policy Act

NEPA's "twin aims" are to force every agency "to consider every significant aspect of the environmental impact of a proposed action," and to "inform the public that it has indeed considered environmental concerns in its decision-making process."   *Balt. Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 97 (1983).   NEPA requires federal agencies to prepare an Environmental Impact Statement ("EIS") for all "major Federal actions significantly affecting the quality of the human environment."   42 U.S.C. § 4332(C) (Add.-131).

Among other issues, an EIS must analyze the "environmental impact of the proposed action" and reasonable alternatives.   *Id.* § 4332(C).   This includes considering the risks that the proposed action may result in a catastrophic environmental impact, the consequences of such an outcome, and reasonable alternatives for mitigating such consequences.   *E.g.*, *New York v. NRC*, 681 F.3d 471, 478 (D.C. Cir. 2012) ("Under NEPA, an agency must look at both the probabilities of potentially harmful events and the consequences if those events

7

come to pass.") (citing *Carolina Envtl. Study Grp. v. United States*, 510 F.2d 796, 799 (D.C. Cir. 1975)).

The completion of an EIS does not end an agency's responsibility to consider environmental impacts. *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 371-72 (1989). As the Supreme Court has recognized, it would be incongruous with NEPA's "action-forcing" purpose to allow an agency to put on "blinders to adverse environmental effects," just because an EIS has been completed. *Id*. at 371. Thus, an agency must *supplement* its EIS if there is new information showing that the remaining federal action will affect the quality of the human environment "in a significant manner or to a significant extent not already considered." *Id.* at 374; *City of Olmsted Falls, OH v. FAA*, 292 F.3d 261, 274 (D.C. Cir. 2002).

Pursuant to the Council on Environmental Quality's ("CEQ") implementing NEPA regulations, supplemental NEPA analysis is necessary whenever an agency learns of "significant new circumstances," or new "information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(Add.-136); *Deukmejian v. NRC*, 751 F.2d 1287, 1298 (D.C. Cir. 1984) ("the [NRC's] obligations under NEPA . . . [include] a continuing duty to supplement EISs which have already become final whenever the discovery of significant new information renders the original EIS inadequate"). As discussed

8

below, these mandates are also incorporated into NRC's own regulatory scheme. *See infra* at 11.

### 3.    Relevant Commission Regulations

#### a.    The Commission's NEPA Framework For Relicensing Nuclear Power Plants

NRC's NEPA regulations require an EIS for the relicensing of a nuclear power plant.   10 C.F.R. §§ 51.20(b)(2).   Before even a formal draft EIS is prepared, however, the license applicant itself must prepare what amounts to an initial draft, called the "Environmental Report" ("ER"), which must address all the same impacts, alternatives, and other environmental issues that will be addressed later in the NRC's EIS.   *See generally* 10 C.F.R. § 51.45 (Add.-76).

The scope of NEPA review for nuclear power plant relicensing is governed by portions of 10 C.F.R. Part 51, and the NRC's 1996 "Generic Environmental Impact Statement for License Renewal of Nuclear Plants" ("GEIS") (NUREG-1437) (May 1996) (JA   ).   The GEIS resolved certain relicensing issues applicable to *all* plants at the time the GEIS was issued, and as a result, individual "supplements" to the GEIS are prepared for individual plant relicensing decisions.   10 C.F.R. § 51.95(c).

Among the vital matters requiring NEPA analysis for nuclear power plant licensing (and relicensing) are prospective measures to ameliorate the consequences of a severe accident, or "SAMAs" – i.e., measures "intended not to prevent an

9

accident, but to lessen the severity of the impact of an accident should one occur."
*Limerick Ecology Action, Inc. v. NRC*, 869 F.2d 719, 731 (3d Cir. 1989); *id.* at 741
(holding that SAMAs "must be given careful consideration" in the NEPA process);
Waiver Decision at 4 (recognizing "Commission must take the requisite 'hard look'
at [SAMAs], giving them the careful consideration and disclosure required by"
NEPA) (citations omitted).[1]

        While NRC regulations recognize that SAMAs are among the issues that
*must* be considered in the NEPA process for relicensing, the GEIS and NRC
regulations provide that a complete baseline SAMA analysis is only required during
license renewal if none was conducted during the initial license phase.   Thus, the
applicable regulation for an ER provides:

> If the staff has not previously considered severe accident mitigation
> alternatives for the applicant's plant in an environmental impact statement or
> related supplement or in an environmental assessment, a consideration of
> alternatives to mitigate severe accidents must be provided.

10 C.F.R. § 51.53(c)(3)(ii)(L) (Add.-85).   The same approach applies to

---

        1       As the Board explained, a SAMA analysis includes, *e.g.*,
"consideration of (i) hardware modifications, procedure changes, and training
program improvements; (ii) SAMAs that could prevent core damage as well as
SAMAs that could mitigate severe accident consequences; and (iii) the full scope of
potential accidents (meaning both internal and external events)."   First ASLB Op.
at 3 n.11 (JA   ).   The terms "severe accident mitigation design alternatives" (called
"SAMDAS") and "severe accident mitigation alternatives ("SAMAs") – mean the
same thing.   Waiver Denial at 2 (JA   ).

preparation of a relicensing draft and final SEIS.  *Id.* App. B, Table B-1 (App.-118) (providing, as to "[s]evere accidents," "alternatives to mitigate severe accidents must be considered for all plants that have not considered such alternatives"); *accord* GEIS, Section 5-4.

Nonetheless, consistent with the CEQ regulations, the Commission's NEPA framework separately provides that NEPA supplements must address *any* "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."  10 C.F.R. §§ 51.72(a); 51.92(a)(2).  In the relicensing context, this obligation for the ER is codified at 10 C.F.R. § 51.53(c)(3)(iv) (Add.-85), which provides that the ER for a license renewal "must contain any new and significant information regarding the environmental impacts of license renewal of which the applicant is aware."  *See also id.* § 51.95(c)(3) (requiring consideration of "significant new information" in the Supplemental draft and final EIS to be prepared for license renewal based on the ER).  This includes any new and significant information concerning SAMAs. Waiver Denial at 13-14.

### b.  The Commission's Hearing Procedures

In order to obtain party status and thereby a hearing challenging the adequacy of a relicensing application – and, hence, to also be able to seek judicial review of an

11

adverse decision – an applicant must file a petition to intervene and request for a

hearing, and set forth "contentions" identifying, *inter alia*, the specific issues to be

raised and the reasons those issues are material to the agency's decision-making. 10

C.F.R. § 2.309(f) (Add.-41).[2]   An applicant need not *prove* the contentions at the

admissibility stage, but rather must only identify material facts in dispute.   *E.g.*,

*Sierra Club v. NRC*, 862 F.2d 222, 226 (9th Cir. 1988) (quoting *Carolina Power &*

*Light Co.*, 23 N.R.C. 525, 541 (1986)).

For compliance with NEPA, contentions must be timely presented in

connection with the ER prepared by the license applicant.   10 C.F.R. § 2.309(f)(2).

Thus, a NEPA contention first raised on issuance of a Draft EIS will generally be

deemed untimely, unless it is based on new information not previously available.

*Id.* § 2.309(c).[3]

---

2      Specifically, the regulations require an applicant to: "(i) Provide a specific statement of the issue of law or fact to be raised or controverted"; "(ii) Provide a brief explanation of the basis for the contention"; "(iii) Demonstrate that the issue raised in the contention is within the scope of the proceeding"; "(iv) Demonstrate that the issue raised in the contention is material to the findings the NRC must make to support the action that is involved in the proceeding"; and "(v) Provide a concise statement of the alleged facts or expert opinions which support the requestor's/petitioner's position on the issue and on which the petitioner intends to rely at hearing, together with references to the specific sources and documents on which the requestor/petitioner intends to rely to support its position on the issue." *Id.*

3      Accordingly, while it may seem counterintuitive to raise NEPA concerns before the NEPA documentation itself is issued even in draft form, let

Among the issues that may *not* be raised in such a proceeding is a challenge to any "rule or regulation of the Commission, or any provision thereof."   10 C.F.R. § 2.335(a) (Add.-55).   Rather, in order to pursue an issue deemed resolved by rule or regulation, an applicant must file a separate "waiver petition" requesting that the rule or regulation be "waived or an exception made for the particular proceeding," based upon "special circumstances with respect to the subject matter of the particular proceeding."   *Id.* § 2.335(b).

A request for a hearing is initially heard by an Atomic Safety and Licensing Board.   10 C.F.R. § 1.15; *see also* 28 U.S.C. § 2241.   Board decisions granting (or denying in *toto*) a hearing are immediately appealable to the Commission.   *Id.* § 2.311.   In proceedings before the Board or Commission, the Commission's interests are represented by an office within the Commission unconnected to the adjudicatory branch, referred to as "NRC Staff."   *See* 10 CFR § 2.1202.

---

alone completed, the NRC's process *requires* that if a party is aware of a NEPA concern once the ER is issued, it must be raised at that time or be forever forfeited. 10 C.F.R. § 2.309.   Under that process, the contentions "migrate" from the ER to the Draft EIS, and then from the Draft to the Final EIS, unless the issues are resolved in the subsequent documentation.   *E.g.*, *Progress Energy Fla., Inc.* (Levy County Nuclear Power Plant, Units 1 and 2), LBP-11-01, 73 N.R.C. 19, 26 (2011); *accord S. Nuclear Operating Co.* (Early Site Permit for Vogtle ESP Site), LBP-08-02, 67 N.R.C. 54, 63–64 (2008).   In short, rather than waiting until the NEPA process is complete to determine agency compliance, an interested party must raise – and pursue – all issues of which it should be aware *from the beginning of the process*. 10 C.F.R. § 2.309.

13

B.     **Factual And Procedural Background**

1.     **The Commission's Consideration of SAMAs In Connection With Limerick's Original Operating License**

In 1980, in the wake of the partial nuclear meltdown at Three Mile Island, the Commission issued a policy requiring the consideration of "severe accidents in future NEPA reviews." *Limerick Ecology*, 869 F.2d at 726.   Five years later, the agency reversed course and announced that it would "exclude[ ] consideration of severe accident mitigation design alternatives from individual licensing proceedings."  *Id.* at 727.

In 1987 Limerick Ecology petitioned for review over the original Limerick licensing decision, challenging, *inter alia*, whether the NRC had adequately considered SAMAs there.  *Id.* at 731.   As the Third Circuit explained, the Commission had "neither considered nor specifically rejected SAMDAs" on the grounds that there were "no special or unique circumstances about the Limerick site" that warranted their consideration.  *Id.* at 731-32.   During the hearing process, Limerick Ecology's arguments had been rejected on the grounds that, while "SAMDAs were being excluded from consideration in the Limerick licensing

14

proceedings, they were not being ignored," because the issue was being addressed

generically for all plants.   *Id.* at 732.[4]

    The Third Circuit reversed, rejecting the premise that SAMAs could be

addressed generically.   869 F.2d at 737-39.   As the court explained, "because risk

equals the likelihood of an occurrence times the severity of the consequences," the

accident risks will "vary tremendously," even for plants "of exactly equal design and

construction," because "potential consequences will largely be the product of the

location of the plant . . . ."   *Id.* at 738.   "This is particularly true for plants such as

Limerick," the court continued, "which were built near densely populated areas."

*Id.*; *see also id.* (noting population estimate in 2000 of seven million within 50 miles

of the plant).

_____

    4      The "Appeals Board" (an intermediate appellate tribunal no longer part
of the hearing process) had rendered the decision, and the Commission declined
review.   *Id.* at 733.   However, one Commissioner dissented, explaining, given
Limerick's location "in [a] densely population area[ ]," SAMAs warranted further
consideration.   *Id.*; *see also Phila. Elec. Co.,* (Limerick Generating Station, Units 1
and 2), 23 N.R.C. 125, 128-29 (1986) (separate views of Commissioner Asseltine)
("[T]here is about a 50–50 chance of a severe core melt accident, an accident at least
as severe as the [Three Mile Island] accident, within the next 20 years [and] I do not
believe that a 50–50 chance within the next 20 years is an acceptable level of risk.
Further, I believe that particularly at high-population sites, such as Limerick and
Indian Point, consideration should be given to additional accident prevention and
mitigation measures because of the uncertainties associated with estimating risk and
because of the high cost to society should a serious accident occur at such a site.").

Subsequent to the court's decision, the Commission completed a

"Supplement" to the Final EIS for Limerick to address SAMA issues.   Supplement

to the Final Environmental Statement related to the operation of Limerick

Generating Station, Units 1 and 2 (Aug. 1989) ((NUREG-0974) (JA   ).

## 2.     The Commission's Denial of NRDC's Request For A Hearing On SAMA Contentions In Connection With Relicensing The Limerick Plant

### a.     The Board's Decision Granting NRDC's Hearing Request

In response to the Notice of Opportunity for Hearing on Exelon's relicensing

application for Limerick, *see* 76 Fed. Reg. 52,992 (2011), NRDC timely submitted a

petition to intervene and hearing request, along with expert supporting declarations.

NRDC Petition to Int. and Hearing Req. and Expert Declarations (JA _); *see also* 10

C.F.R. § 2.309(f)(2) (requiring that NEPA contentions be filed when ER is issued).

In an extensive Memorandum the ALSB admitted several of NRDC's SAMA

contentions, finding they satisfied each of the contention admissibility criteria, and

reframing the contentions as follows:

> Applicant's Environmental Report (§ 5.3) erroneously concludes that new
> information related to its severe accident mitigation design alternatives
> ("SAMDA") analysis is not significant, in violation of 10 C.F.R. §
> 51.53(c)(3)(iv), and thus the ER fails to present a legally sufficient analysis in
> that:

1.     Exelon has omitted from its ER a required analysis of new and significant information regarding potential new severe accident mitigation alternatives previously considered for other BWR [Boiling Water Reactor] Mark II Containment reactors.[5]

2.     Exelon's reliance on data from TMI [Three Mile Island] in its analysis of the significance of new information regarding economic cost risk constitutes an inadequate analysis of new and significant information.[6]

First ASLB Op. (JA    ) at 40.

_____

5     As NRDC's experts had explained, other Boiling Water Reactors have identified numerous cost-beneficial or potentially cost-beneficial SAMAs such as, for example, portable generators for emergency power supply; providing alternative sources of water to address emergencies; and improvements to the connections between electric power systems to allow more flexible supply of critical power needs during an emergency.   NRDC Contentions Expert Decl. ¶¶ 12-14 (JA _); *see also* ASLB Op. at 20 (finding contention admissible, explaining that while NRDC's expert "points out that the 1989 SAMDA considered a cost-benefit analysis for only seven mitigation alternatives," in comparison, "'the cohort of 27 U.S. BWR units at 18 sites that are undergoing license renewal reviews, or that have recently been granted license renewal, have on average considered 175 Phase I SAMA candidates and 35 Phase II SAMA candidates.'") (quoting Expert Decl. ¶ 12); *id.* at 21 ("NRDC has demonstrated that among recent BWR applications for license renewal, applicants have found between two and eleven SAMA candidates to be cost-beneficial or potentially cost-beneficial [and] has meticulously listed which SAMA candidates these plants found to be cost-beneficial.   This suggests to us that this contention is material, as consideration of new information regarding SAMA candidates could very well lead to a conclusion that this information is significant. Further, we find that NRDC's analysis of recently-performed SAMAs at other plants provides support for its argument that the information that Exelon has failed to consider is not only new, but also significant").

6     *See also* First ASLB Op. at 24-25 (explaining bases for admission of this Contention); *accord* NRDC Expert Decl. ¶¶ 17-24 (JA    )(detailing deficiency in reliance on Three Mile Island, a Pressurized Water Reactor located in a markedly less economically developed and populated site than Limerick).

17

In admitting the contentions the Board first concluded NRDC had demonstrated standing (which was not contested), First ASLB Op. at 5-7, and then rejected NRC Staff's and Exelon's arguments against a hearing. *Id.* at 10-40. Staff and Exelon principally argued the contentions were barred by 10 C.F.R. § 51.53(c)(3)(ii)(L), because a SAMA had previously been prepared for Limerick. *Id.*

The Board found, however, that the regulation could not be read to bar a hearing because to do so would conflict with the separate NEPA obligation to consider any new and significant information during the relicensing process. *Id.* at 15. Thus, concluding that "[r]egulations cannot trump statutory mandates," *id.*, the Board admitted NRDC's contentions aimed at whether Exelon had considered new and significant information related to SAMAs in the ER. *Id.* at 21 ("NRDC has shown there are numerous new SAMA candidates which should be evaluated for their significance.").[7]

---

7    The Board found other aspects of NRDC's SAMA contentions, and a separate contention concerning the "no action alternative," did not meet the contention admissibility requirements of 10 C.F.R. § 2.309(f).   First ASLB Op. at 40.

18

**b.    The Commission's Decision That SAMA Contentions For Limerick's Relicensing Are Only Admissible Through Waiver of Commission  Regulations, And Denial Of NRDC's Waiver Petition**

The Commission reversed the Board's grant of NRDC's hearing request. Waiver Decision, CLI-12-19 (JA    ).   While recognizing the mandate for "the license renewal application [to] contain any significant new information relevant to environmental impacts," which "may be challenged in individual adjudications," the Commission concluded that 10 C.F.R. § 51.53(c)(3)(ii)(L) *exempted* Exelon from challenges concerning its site-specific supplemental SAMA analysis in the ER – a result the Commission characterized as an "ambiguity in our regulations."   *Id.* at 11. To address the ambiguity, the Commission concluded that "the proper procedural avenue for NRDC to raise its concerns is to seek a *waiver of the relevant provision*" of the regulations, pursuant to 10 C.F.R. § 2.335(b).   *Id*. at 13. (emphasis added). On that basis the Commission remanded the matter to the Board, inviting NRDC to submit a waiver request.   *Id.* at 17.

On November 21, 2012 NRDC filed a Petition, by way of motion, for waiver of 10 C.F.R. § 51.53(c)(3)(ii)(L), as applied to the Limerick Renewal proceeding. Waiver Petition ("Waiver Pet.") (Nov. 21, 2012)   (JA _).   The Petition explained that if a waiver is necessary, it must be granted to ensure compliance with the AEA

19

and NEPA, and the waiver criteria are satisfied.  *Id.* at 13-27; *see also* Reply in Support of Waiver Petition (Dec. 21, 2012) (JA   ).[8]

The Board denied the waiver.  *Exelon Generation Co., LLC* (Limerick Generating Station, Units 1 and 2), LBP-13-1 (Feb. 6, 2013) (JA   ) ("Second ASLB Op.").   As the Board viewed the issue, the Commission's requirement for a waiver put NRDC in a "catch-22" under which a waiver could not be granted, because the very purpose of the regulation sought to be waived is to *prevent* NRDC from pursuing the SAMA contentions the waiver request would allow if granted.  *Id.* at 22.

The Commission affirmed denial of the waiver it had invited NRDC to submit, albeit on different grounds.   Waiver Denial, CLI-13-07 (JA _).   The Commission continued to acknowledge that, under NEPA and its own regulations, the NEPA process for license renewal must consider "new and significant information," including information concerning SAMAs.  *Id.* at 13-14.   Thus, the

_____

8    In the meantime, on April 30, 2013, the NRC published its Draft Supplemental EIS ("DSEIS") for the Limerick relicensing.   In order to preserve the timeliness of its arguments *vis-á-vis* the DSEIS, NRDC filed a motion to resubmit its SAMA contentions directed at that new document.   On July 12, 2013, the ASLB denied the motion, but tolled the deadline for NRDC to submit these contentions, stating that they should be resubmitted if the waiver petition was granted.  *Exelon Generation Co, LLC*, Memorandum and Order of July 12, 2013.   The Final Limerick SEIS is anticipated in August 2014.  *See* http://www.nrc.gov/reactors/operating/licensing/renewal/applications/limerick.html.

20

Commission specifically directed "the Staff to review the significance of any new SAMA-related information in its environmental review of Exelon's license renewal application, *including the information presented in NRDC's waiver petition*, and to discuss its review in the final supplemental EIS." *Id.* at 23 (emphasis added).

However, the Commission drew a sharp distinction between Exelon and the NRC Staff's obligations under NEPA, and *NRDC's right to obtain and participate in a hearing on those same issues*. Thus, while the Commission recognized that "[o]ur rules provide a mechanism for supplementing an original NEPA analysis," the agency continued: "*But our rules do not guarantee a hearing*." *Id.* at 14 (emphasis added). Thus, in light of 10 C.F.R. § 51.53(c)(3)(ii)(L), the Commission found NRDC is not entitled to a hearing on concededly relevant SAMA contentions that must be addressed in the NEPA process.

With regard to the waiver request, which would have been an alternate procedure through which NRDC could have obtained party status, the Commission focused on the requirement that a waiver movant demonstrate that "the issues it raises are unique" to the specific plant at issue. *Id.* at 18. Because, in the Commission's view, NRDC's contentions "could apply to any license renewal applicant for whom SAMAs already were considered," the Commission found that NRDC had failed to demonstrate that they are unique. *Id.* On that basis the waiver

21

petition was denied, and NRDC's request for party status in the proceeding was finally rejected.   *Id.* at 23.[9]

### 3.   The Commission's Separate Decision To Hold All Waste Confidence Contentions In Abeyance

On July 9, 2012, NRDC filed a new proposed "Waste Confidence" contention, asserting the ER failed to address the environmental impacts of continued storage of spent nuclear fuel at Limerick.   The Commission had sought to address that issue generically, but at the request of NRDC and others this Court had set aside the most recent generic determination on the grounds that it violated NEPA, which prompted filing of the new contention.   *See New York et. al. v. NRC*, 681 F.3d 471 (D.C. Cir. 2012).

Both the NRC Staff and Exelon opposed this separate proposed contention, arguing it was inadmissible because the issue would be resolved in another generic determination.   Exelon Opp. to NRDC's New Waste Confidence Contention at 11 (Aug. 2, 2012); NRC Staff Response to NRDC's New Waste Confidence Contention ("Staff Waste Conf. Resp.") at 6 (Aug, 2, 2012).   However, before the Board could

---

9        In the course of considering the waiver request the Commission purported to reject aspects of NRDC's SAMA contentions.   Waiver Denial at 18 (20-21).   However, to date the Commission has not considered whether the contentions even meet the threshold contention eligibility criteria of 10 C.F.R. § 2.309(f).   Rather, the Commission has only considered NRDC's substantive arguments in connection with whether they are, in the Commission's view, "unique" to Limerick.   Waiver Denial at 20-21.

22

rule on NRDC's request, on August 7, 2012 the Commission ordered that all such contentions – which had been filed by numerous parties in multiple proceedings – *be held in abeyance*, because the Commission intended to once again resolve the issue of spent nuclear fuel storage on a generic basis.   *Calvert Cliffs Nuclear Project, LLC* (Calvert Cliffs Nuclear Power Plant, Unit 3), 76 N.R.C. 63, 68-69 (2012). Accordingly, the Board in this proceeding stayed the matter before deciding whether NRDC should be granted party status based on this contention.   Board Order of Aug. 7, 2012 (JA   ).[10]

---

[10]      In September 2013, the NRC issued a Draft Generic EIS ("Waste Confidence GEIS") and Waste Confidence Proposed Rule purportedly to address the Court's remand.   *See* Draft NUREG-2157, "Waste Confidence Generic Environmental Impact Statement" (Adams ML13224A106), *available at http://pbadupws.nrc.gov/docs/ML1322/ML13224A106.pdf* (last visited July 18, 2014).   As the Draft Waste Confidence GEIS explains, "[t]he NRC intends to codify the results of its analyses in this draft GEIS at 10 CFR 51.23" and "NRC licensing proceedings for nuclear reactors . . . *will continue to rely on the generic determination* in 10 CFR 51.23 to satisfy obligations under NEPA with respect to the environmental impacts of continued storage."   *Id.* at 1-6 (emphasis added).   In other words, the Commission evidently has no intention of allowing this issue to be heard in individual licensing proceedings.

## <u>SUMMARY OF ARGUMENT</u>

NRDC's Petition is timely, and the Commission erred in concluding that new and significant information concerning SAMAs is categorically prohibited from the Limerick relicensing proceeding.

1.     The Court has jurisdiction over this Petition for Review.   The Commission has made a final decision that NRDC may not pursue SAMA contentions in the Limerick relicensing proceeding.   NRDC has no other admitted contentions, and the speculative possibility of admitted contentions in the future cannot defeat the Court's jurisdiction at this time.   *E.g.*, *Alaska*, 980 F.2d at 763.

2.     The Commission erred in concluding that NRDC may not obtain a hearing related to SAMA contentions.

a.     NRDC contends there is new and significant information concerning SAMAs that should be considered during the NEPA process on Limerick's relicensing.   The Commission does not dispute that a relicensing ER, and EIS, must consider such new and significant information related to SAMAs, even where a SAMA analysis was previously conducted.   Given that common ground, applying NRC's regulations to preclude NRDC from obtaining a hearing and ultimately being able to seek judicial review on whether the Commission has complied with NEPA with regard to SAMA-related issues violates the AEA, the

24

APA, and the NEPA scheme.   *E.g.*, *UCS I,* 735 F.2d 1437; *Union of Concerned Scientists v. NRC* ("*UCS II*"), 920 F.2d 50, 54-56 (D.C. Cir. 1990).

b.    In the alternative, if, as the Commission contends, the "waiver" regulation provides the only vehicle through which NRDC can obtain a hearing on new and significant information concerning SAMAs, then the Commission erred in denying NRDC's waiver request.   NRDC meets the waiver criteria in 10 C.F.R. § 2.335(b), and, in any event, any result under which NRDC is denied the right to pursue SAMA contentions the Commission itself has determined are material to the proceedings would violate the AEA, the APA, and NRDC's rights under NEPA to a hearing before the Commission and review in this Court.   *Id.*

## STANDING

NRDC has Article III standing based upon its members' proximity to Limerick, and their concrete concerns regarding the adequacy of the facility's capacities to mitigate the adverse effects of a severe nuclear accident.   *E.g.*, *Sierra Club v. EPA*, No. 08-1144, 2014 WL 2895930, at *4 (D.C. Cir. June 27, 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 (1992)); *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014).

NRDC is a national non-profit environmental organization with a nationwide membership of over 350,000 (plus hundreds of thousands of online activists) and

25

almost 16,000 members in Pennsylvania – almost 3,000 of whom live within 50 miles of Limerick and more than 50 of whom live within 10 miles of the facility. *See* Declaration of Linda Lopez ¶ 4, Nov. 17, 2011 (JA _).[11]

Among its missions, NRDC seeks to maintain and enhance environmental quality and to safeguard the natural world for present and future generations. *Id*. ¶ 5. As relevant here, NRDC seeks to improve environmental, health, and safety conditions at nuclear power plants, including Limerick. *Id.* ¶ 6. To that end, NRDC utilizes its institutional resources, including legislative advocacy, litigation, and public outreach and education, to minimize the risks that nuclear facilities pose to its members and the general public. *Id.*

Member organizations such as NRDC may demonstrate Article III standing by demonstrating the standing of one or more members on a matter germane to the organization's interests. *Sierra Club*, 2014 WL 2895930, *4 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000)); *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323 (D.C. Cir. 2013). Here, NRDC members Mr. Charles W. Elliott, Ms. Suzanne Day, and Mr. William White all reside within 50 miles of the Limerick plant and have concrete health and safety concerns associated with the Commission granting a renewed operating license for

---

11      The declarations were all originally submitted to the Commission in support of NRDC's motion to intervene (JA    ).

Limerick without adequately considering, in the NEPA process, measures to mitigate the otherwise catastrophic consequences of a severe nuclear accident. *See* Declarations of Charles W. Elliott, Suzanne Day, and William White (JA _). Indeed, these individuals are in precisely the same posture as those the Supreme Court hypothesized *would* have standing to challenge a deprivation of procedural rights such as that asserted here. *E.g.*, *Lujan v. Defenders of Wildlife* , 504 U.S. 555, 572 n.7 (1992). NRDC's experts have further substantiated these health and safety concerns, explaining their underlying scientific bases. Declaration of Dr. Thomas Cochran, Dr. Matthew McKinzie, and Dr. Jordan Weaver, and Declaration of Christopher E. Paine (JA _). Accordingly, as the ASLB ruled, and neither Staff nor Exelon has contested, *see* First ASLB Op. at 5-7, NRDC has Article III standing. *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011); *Shays v. Fed. Election Comm'n*, 414 F.3d 76, 83 (D.C. Cir. 2005).

**ARGUMENT**

**I.      THE COURT HAS JURISDICTION OVER NRDC'S PETITION.**

**A.      This Petition Falls Within An Exception To The General Rule Limiting Hobbs Act Review To Final Orders Granting Or Denying A License.**

As noted, review of Commission Orders is governed by the Hobbs Act, which authorizes review of any "final order" of the Commission. 28 U.S.C. § 2344

27

(Add.-124).   The term "final order" has been narrowly construed, and the general rule is that "a final order in a licensing proceeding under 42 U.S.C. § 2239(a) [is] an order granting or denying a license."   *NRDC v. NRC*, 680 F.2d 810, 815 (D.C. Cir. 1982); *see also City of Benton v. NRC*, 136 F.3d 824, 825 (D.C. Cir. 1998); *S. C. Loveland Co. v. United States*, 534 F.2d 958, 963 (D.C. Cir. 1976).

However, this Court has recognized an exception to that rule where a party has been denied party status altogether.   *E.g.*, *Thermal Ecology Must Be Preserved v. AEC*, 433 F.2d 524, 526 (D.C. Cir. 1970) ("An order denying intervention [into a Hobbs Act proceeding] would be reviewable").   As the Court has noted, the exception is necessary because the Hobbs Act limits review to a "party" aggrieved by an Order, and thus, where participation as a party is denied, an interested party would be prohibited from review of the final licensing decision in light of their non-party status.   *E.g.*, *Alaska*, 980 F.2d at 763 ("[Having failed to achieve the status of a party to the litigation, the putative intervenor could not later seek review of the final judgment on the merits."); *Cmty. Broad. of Bos., Inc. v. FCC*, 546 F.2d 1022, 1025 (D.C. Cir. 1976) ("[I]mmediate appeal must be necessary to preserve rights that would otherwise be lost on review from final judgment."); *cf. Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003) ("[D]enial of a motion for intervention as of right is an appealable final order 'because it is conclusive with

respect to the distinct interest asserted by the movant.'") (quoting *Smoke v. Norton*,

252 F.3d 468, 470 (D.C. Cir. 2001)).

Accordingly, because on October 31, 2013 the Commission issued a final

order denying NRDC party status to pursue SAMA contentions, this Court has

jurisdiction to resolve this Petition for Review.[12]

### B.    The Commission's Efforts To Defeat This Court's Jurisdiction Must Fail.

Seeking to avoid review, the Commission has relied on NRDC's proposed

waste confidence contention to claim NRDC is not entitled to review at this time

because "the NRC has not yet determined whether NRDC's proposed Waste

Confidence contention will be admitted."   Mot. to Dismiss at 13.   However, the

Waste Confidence contention is irrelevant to the timeliness of NRDC's petition for

review over SAMA contentions, because the two issues are wholly distinct.   *Vt.*

*Dep't of Pub. Serv. v. United States*, 684 F.3d 149, 156 n.8 (D.C. Cir. 2012)

(disposition of *unrelated* contentions irrelevant to the appropriate timing for a

petition for review); *Blue Ridge Envtl. Def. League v. NRC*, 668 F.3d 747, 757 (D.C.

---

12     The First Circuit has suggested that Hobbs Act review may be available after a final licensing decision to a party who sought, but was denied, party status earlier in the proceeding.   *Mass. v. United States*, 522 F.3d 115, 131 (1st Cir. 2008). This Circuit has never read the statute in this liberal fashion, nor have other courts of appeal.   *See, e.g., Nat'l Ass'n of State Util. Consumer Advocates v. FCC*, 457 F.3d 1238, 1247 (11th Cir. 2006); *Erie-Niagara Rail Steering Comm'n v. STB*, 167 F.3d 111, 112 (2d Cir. 1999).

Cir. 2012) (petition premature where other contentions on the *same issue* remained pending before the Commission).

Moreover, because the Waste Confidence contention has been held in abeyance by the Commission, NRDC has *not obtained party status through that contention either*.   *See supra* at 22-23 . Accordingly, the Waste Confidence contention is no different from any other issue on which NRDC *might* seek to base a hearing request, and as to which it might – or might not – ever become a party. Unless and until such a request is granted, NRDC is not a party to the proceeding, and thus, absent immediate review here, will *not* be permitted to seek review of a renewed Limerick license based on the failure to consider new and significant information concerning SAMAs. 28 U.S.C. § 2344 ("Any *party* aggrieved" may seek judicial review) (emphasis added); *Water Transp. Ass'n v. ICC*, 819 F.2d 1189, 1192-93 (D.C. Cir. 1987).   Under these circumstances review is appropriate at this time, and there is no jurisdictional or prudential bar to such review.   *E.g.*, *Cmty. Broad. of Bos., Inc.*, 546 F.2d at 1025; *City of Cleveland v. NRC*, 68 F.3d 1361, 1370 n.10 (D.C. Cir. 1995).

## II.   THE COMMISSION ERRED IN CONCLUDING THAT CONTENTIONS RAISING NEW AND SIGNIFICANT INFORMATION CONCERNING SAMAS ARE PROHIBITED IN THE LIMERICK RELICENSING PROCEEDING.

As noted, in order to fulfill the mandate to achieve "widespread participation" in nuclear power plant licensing proceedings, 42 U.S.C. § 2013(d) (Add.-2), the AEA mandates the Commission "*shall* grant a hearing upon the request of any person whose interest may be affected by the proceeding, and shall admit any such person as a party to such proceeding."   *Id.* § 2239(a)(1)(A) (Add.-11) (emphasis added).   This Court has repeatedly held that to comply with this mandate the Commission must provide a hearing to an applicant raising a NEPA-related issue material to the agency's decision-making.   *UCS II,* 920 F.2d 50; *UCS I*, 735 F.2d 1437; *Calvert Cliffs' Coordinating Comm. v. AEC*, 449 F.2d 1109 (D.C. Cir. 1971).

In this case, the Commission does not dispute that new and significant information concerning SAMAs is material to the relicensing of the Limerick nuclear power plant.   Waiver Denial at 22-23.   However, the Commission takes the position that Petitioner is not entitled to a *hearing* on the issue.   *Id.* at 14 ("[O]ur rules do not guarantee a hearing.").

The Commission's decision is subject to review under the arbitrary and capricious standard.   28 U.S.C. § 2239(b)(Add.-12).   However, because the parties' dispute is over whether the regulations can be read to limit NRDC's right to

31

a hearing – and thus, ultimately, this Court's *jurisdiction* to consider NRDC's contentions – the Commission is not entitled to any deference to its view that the regulations strip NRDC of its hearing rights.   *E.g.*, *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649-50 (1990) (court will not defer to agency's interpretation of provision delimiting court's jurisdiction); *NetCoalition v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013) (citing *Murphy Exploration & Prod. Co. v. DOI*, 252 F.3d 473, 478 (D.C. Cir. 2001)) (same).

Under any standard, because the Commission's denial of NRDC's hearing rights cannot be reconciled with the governing statutes or this Court's precedents, the Commission must be reversed.   This result can best be accomplished by reading the Commission's existing regulatory scheme to authorize a hearing under these circumstances, which was the ASLB's original ruling.   Alternatively, the Court should conclude that Petitioner is entitled to a *waiver* of the regulations NRC contends are the obstacle to a hearing, and afford NRDC a hearing on that basis.

**A.** **The Commission Erred In Determining That Its Regulatory Scheme Precludes NRDC From Pursuing SAMA Contentions Without Obtaining A Regulatory "Waiver."**

**1.** **A Hearing Must Be Provided For New And Significant SAMA-Related Issues, Which The Commission Concurs Are Material To The Relicensing Decision**.

Before turning to the narrow but exceedingly important dispute here – i.e., whether NRDC is entitled to a hearing before the Commission (and ultimately, judicial review) over SAMA contentions – it is critical to begin with the matters on which the parties agree. *First*, there is no dispute that during the NEPA process for nuclear power plant relicensing, an applicant (and ultimately, the Commission) must consider any "new and significant information regarding the environmental impacts of license renewal of which the applicant is aware." 10 C.F.R. § 51.53(c)(3)(iv) (setting forth this requirement for license renewal ER); *id.* § 51.95(c)(3) (same requirement for the supplemental EIS); *see also id.* §§ 51.72(a), 51.92(a)(2) (embodying this requirement in NRC's general NEPA regulations).

*Second*, it is common ground that among the issues governed by the new and significant information standard is the consideration of such information *related to SAMAs*. Thus, the Commission does not dispute that, in order to comply with NEPA, the agency must "review and consider *any* new and significant information presented during the review of individual license renewal applications," even on

33

SAMAs.   Waiver Decision at 6; Waiver Denial at 14 ("If new and significant

information is available, then the original SAMA analysis may be inadequate to

satisfy NEPA at the license renewal stage, and may require supplementation.").

*Finally*, in light of the foregoing requirements, there is also no dispute that in

preparing the Supplemental NEPA documentation for Limerick, Staff must *consider*

*any new and significant information related to SAMAs for the nuclear power plant.*

Thus, as the Commission explained, where there is "new information that could

render invalid the original site-specific analysis" on SAMAs for Limerick, "then

such information should be identified and evaluated by the Staff for its significance,

consistent with our NEPA requirements."   Waiver Decision at 13 n.54.

Accordingly, although the Commission's decision confusingly suggests that

10 C.F.R. § 51.53(c)(3)(ii)(L) somehow exempts the applicant and Staff from any

requirement for a "site-specific supplemental SAMA analysis in conjunction with

the Limerick license renewal application," Waiver Decision at 11; *see also* Waiver

Denial at 2 ("The rule exempts Exelon from including in its Environmental Report a

site-specific [SAMA] analysis"), in fact that is not the Commission's position on the

interplay between 10 C.F.R. § 51.53(c)(3)(ii)(L) and the obligation to consider new

and significant information in the NEPA process.   Rather, recognizing, as it must,

that "regulations cannot trump statutory mandates," First ASLB Op. at 15, the

34

Commission's final Order states unequivocally that because "*NRDC has identified information that bears consideration in our environmental review of Exelon's application*," Waiver Denial at 22, in preparing the Final SEIS the Staff must "review the significance of any new SAMA-related information in its environmental review of Exelon's license renewal application, *including the information presented in NRDC's waiver petition," and must "discuss its review in the final supplemental EIS*." *Id.* at 23 (JA    ) (emphasis added).

Given this broad area of agreement, in an ordinary APA case the only question would be whether, upon *completing* the NEPA process, the Commission had actually *complied* with the mandate to consider the new and significant information concerning SAMAs.   However, the critical distinction between that kind of review and the review available here is that, under the Hobbs Act and its application in this Court, in order for NRDC to judicially challenge the Commission's consideration of SAMAs at the *conclusion* of the relicensing proceeding it must have obtained admission of contentions against the ER, prepared *at the beginning of the process*.   *See supra* at 11-13.   Thus, by denying NRDC's petition to intervene and waiver petition, and thereby denying NRDC a hearing and party status, the Commission has precluded NRDC from challenging – not only before the Commission in a hearing, but ultimately before this Court – whether the

Final Supplemental EIS complies with NEPA, *including in its consideration of information submitted by NRDC itself*.

This result is not permitted by the AEA or this Court's precedents construing it. In *USC I*, for example, the Commission had promulgated a rule precluding interested parties from obtaining a hearing to challenge the adequacy of certain emergency preparedness exercises required before a plant is fully operational. 735 F.2d at 1438. The Commission asserted that while the adequacy of these exercises was certainly material to its licensing decision, it would be impractical to allow a hearing, given that they should occur close to the time the plant was ready to begin full operations. *Id.* at 1440-41. Therefore, the Commission reasoned, their adequacy could be considered "outside the hearing procedure . . . ." *Id.* at 1446.

This Court rejected this approach, explaining that notwithstanding the Commission's discretion to determine the matters relevant to its licensing decisions, it may not deny interested parties a right to a hearing on an issue it deems material. *Id.* at 1446-51; *see also id.* at 1444 ("When a statute requires a 'hearing' in an adjudicatory matter, such as licensing, the agency must generally provide an opportunity for submission and challenge of evidence as to any and all issues of

36

material fact."); *id.* at 1443 (hearing required for "all material factors bearing on the licensing decision raised by the requestor").[13]

Applying that reasoning here, NRDC is entitled to a hearing on admissible SAMA contentions.   Indeed, the substantive safety matter at issue in *UCS I* was quite similar to the SAMA issue here, as both involve methods to insure, in the event of a nuclear emergency, all reasonable steps are taken to protect human health and safety – and, accordingly, as in *UCS I*, the Commission does not dispute new and significant information concerning SAMAs is material to its relicensing decision. Under these circumstances, the right to a hearing provided in the AEA, as interpreted by this Court in *USC I*, compels the conclusion that NRDC is entitled to hearing on otherwise admissible SAMA contentions.   *See also USC I,* 735 F.2d at 1446 ("Administrators may not lightly sidestep procedures that involve the public in

---

13    As the Court noted, Congress itself had made it clear a hearing is required for material issues, precisely in order to insure accountability and ultimate judicial review:

> [T]he hearing process serves a vital function as a forum for raising relevant issues regarding the design, construction and operation of a reactor, and for providing a means by which the applicant and the Commission staff can be held accountable for their actions regarding a particular facility[and] the hearing process is essential to obtaining public confidence in the licensing process which is needed if the nuclear option is to be preserved.

*Id.* at 1447 (emphasis omitted) (quoting H.R. Rep. No. 97-22, Pt. 2, at 11 (1982)).

deciding important questions of public policy."); *id.* at 1447 ("In sum, we find no basis in the statute or legislative history for NRC's position that Congress granted it discretion to eliminate from the hearing material issues in its licensing decision.").

The Court's subsequent ruling in *USC II* also supports this result.   *USC II*, 920 F.2d at 55-6.   In upholding amendments to the NRC's hearing rules in that case, the Court emphasized that "any application of the rule[s] to prevent all parties from raising material issues which could not be raised prior to release of the environmental reports *will be subject to judicial review*."   *Id.* at 56 (emphasis added).   That is precisely the review NRDC seeks here, where the Commission has ruled that *no party* may obtain a hearing on the adequacy of the Commission's consideration of new and significant information concerning SAMAs.   *See also id.* at 55 (a party is entitled to raise in a "hearing on a licensing decision a specific issue [NRC] agrees is material to that decision"); *accord Calvert Cliffs*, 449 F.2d at 1117-18 (rejecting Commission effort to place NEPA matters outside the hearing process, explaining "[a] truly independent review provides a crucial check on the staff's" analysis, and that to put NEPA issues beyond the hearing process "makes a mockery of the Act").

38

### 2.   The Commission's Regulations Do Not Bar The Hearing NRDC Seeks.

Contrary to the Commission's Order, the denial of NRDC's request for a hearing, which violated the AEA, is also not compelled by the Commission's own regulations – which, in any event, should not be construed to create a conflict with the agency's governing statute.   The Commission has relied on its ER regulation, which, again, states in full as follows:

> If the staff has not previously considered severe accident mitigation alternatives for the applicant's plant in an environmental impact statement or related supplement or in an environmental assessment, a consideration of alternatives to mitigate severe accidents must be provided.

10 C.F.R. § 51.53(c)(3)(ii)(L) (Add.-85).   For the SEIS itself, however, the relevant language is in the Appendix to the Part 51 regulations, which lists the items that must be considered in individual plant relicensing proceedings.   10 C.F.R. Pt. 51, App. B.   Those regulations provide, as to "[s]evere accidents," that "alternatives to mitigate severe accidents must be considered for all plants that have not considered such alternatives."   *Id.,* Table B-1 ("Summary of Findings on NEPA Issues For License Renewal of Nuclear Power Plants") (Add.-118).

These regulations certainly make clear that SAMAs must be considered if they have not been considered previously.   However, they are not entirely pellucid as to the result if a SAMA analysis *was* conducted at the original operating license

39

stage.   For several reasons, the Court should resolve that ambiguity by concluding

that the regulations simply mean that, where a prior SAMA analysis has been

conducted, an applicant may limit consideration of SAMAs to new and significant

information bearing on the adequacy of the analysis previously conducted, and a

petitioner is entitled to a hearing on the adequacy of that consideration.   *See* First

ASLB Op. at 19 (concluding that considering new and significant information

concerning SAMAS "does not involve the same analysis as performing an entirely

new SAMA analysis"); *see also, e.g.*, *Sec'y of Labor, Mine Safety & Health Admin.*

*v. W. Fuels-Utah, Inc.*, 900 F.2d 318, 320 (D.C. Cir. 1990) (a "regulation must be

interpreted so as to harmonize with and further and not to conflict with the objective

of the statute it implements") (citations omitted).

  *First* and foremost, with the exception of the critical right to a hearing, this is

the Commission's own regulatory interpretation as set out in the Waiver Denial,

where the Commission itself recognized the continuing duty to consider new and

significant information, and on that basis referred NRDC's submission to the Staff

for "consideration and response" in the Final SEIS.   Waiver Denial at 22-23.   In

short, if the regulations precluded such consideration, there would have been no

basis to direct the Staff to consider these issues.   And if the regulations do not

prohibit (and to the contrary require) such considerations in the SEIS, *there is simply*

40

*no legitimate grounds to interpret the regulations to bar NRDC's request for a hearing and rights to ultimate judicial review*.

*Second*, the 1996 regulatory preamble to the regulations support this limited view of the regulatory exception embodied in these regulations.   61 Fed. Reg. 28,467, 28,470 (1996).   In that preamble, the Commission more than once assured the public that under the regulations, "*any* new and significant information presented during the review of individual license renewal applications" would be considered. *Id.* at 28,468 (emphasis added); *see also, e.g., id.* at 28,472 ("For individual plant reviews, information codified in the rule, information developed in the GEIS, and *any significant new information introduced during the plant-specific review* . . . will be considered in reaching conclusions in the supplemental EIS")(emphasis added); *id.* at 28,470.

In light of inevitable technological and other changes that would occur over time, the Commission also explained, "10 years is a suitable period" to demark the *outer bounds* of when the Commission would assume that additional NEPA review on resolved issues is not required.   *Id.* at 28,471 ("10 years is a suitable period considering the extent of the review and the limited environmental impacts observed thus far, and given that the changes in the environment around nuclear power plants are gradual and predictable with respect to characteristics important to

41

environmental impact analyses."). Here, where the original SAMA analysis for Limerick occurred *in 1989* (JA   ) – more than twenty-five years ago – and even the GEIS itself was prepared eighteen years ago[14] – the Commission certainly contemplated that new and significant information related to SAMAs would be considered during individual plant relicensing.[15]

*Finally*, even if the regulations at issue clearly stated that no further consideration of SAMAs is necessary for the Limerick relicensing proceeding, the regulation would be flatly at odds with the Commission's *separate* regulations stating unequivocally that each license renewal will consider any "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 10 C.F.R. §§ 51.72(a); 51.92(a)(2); *see also id.* §

---

14    Although the Commission "updated" the GEIS in 2013, SAMAs were not considered further at that time. 78 Fed. Reg. 37,282 (2013).

15    Indeed, after the 1996 regulations were published, industry complained that SAMAs should not require consideration in individual plant relicensing decisions at all because plants are considering these matters in Individual Plant Examinations ("IPE") or Individual Plant Examinations of External Events ("IPEE"). In a Federal Register notice the Commission rejected this argument, reiterating that these issues must be considered in site-specific NEPA reviews, and that an IPE or IPEE does not substitute for NEPA's requirements. 61 Fed. Reg. 66,537, 66,540 (Dec. 18, 1996). Even more recently, the Nuclear Energy Institute submitted a formal rulemaking petition *again* seeking to remove SAMAs from individual plant decision-making. In another Federal Register notice the Commission expressly rejected that proposal. 66 Fed. Reg. 10,834 (Feb. 20, 2001).

51.53(c)(3)(iv) (embodying that principle for the ER's requirements); *id.* §

51.95(c)(3) (same for Supplemental draft and final SEIS).   As this Court has

explained, it is "arbitrary and capricious agency action" for an agency to "maintain

two irreconcilable policies."   *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925,

935 (D.C. Cir. 2008).

 Indeed, this result would not only conflict with the Commission's regulations

and the AEA, it would also conflict with the NEPA scheme, which, as noted,

*requires* new and significant information be considered, *e.g.*, *Deukmejian*, 751 F.2d

at 1298, and contemplates judicial review of agency compliance with the statute.

*E.g.*, *Calvert Cliffs,* 449 F.2d at 1117-18 (rejecting effort to place NEPA compliance

beyond the hearing process and judicial review); *see also* 40 C.F.R. § 1500.1

(explaining "the federal agencies *and the courts* share responsibility for enforcing

[NEPA] so as to achieve the [Act's] goals") (emphasis added).

 This alone would mandate NRDC's right to a hearing on its contentions –

which concern precisely such new and significant information – because the NRC is

not permitted to apply a regulation in conflict with a statute.   *E.g.*, *Auer v. Robbins,*

519 U.S. 452, 463 (1997) (while agency "is free to write [ ] regulations as broadly as

[it] wishes," that discretion is cabined by "the limits imposed by the statute"); *Okla.*

*Dep't of Envtl. Quality v. EPA*, 740 F.3d 185, 194-195 (D.C. Cir. 2014) ("Although

the EPA's interpretation of its own regulation is ordinarily entitled to controlling weight . . . we cannot defer where, as here, the interpretation 'violate[s] the very statute the agency administers.'") (quoting *City of Idaho Falls v. FERC*, 629 F.3d 222, 230 (D.C. Cir. 2011)).[16]

Accordingly, the applicable regulations should be interpreted to require that both (a) during license renewal the applicant, and ultimately the Commission, must consider any new and significant information bearing on SAMAs *and* (b) an interested party who meets the hearing eligibility criteria is entitled to a hearing on the adequacy of that consideration.

### B.   If A Regulatory Waiver Is Required For NRDC To Pursue SAMA Contentions, The Commission Erred In Denying The Waiver.

According to the Commission, although new and significant information concerning SAMAs must be considered in the Limerick relicensing NEPA review, there is no incongruity in applying Commission regulations to deny NRDC's request

---

16      Although, given these statutory constraints, it is not necessary for the Court to consider NRDC's constitutional rights, it bears mentioning that denying NRDC a hearing, and judicial review, over these important issues also implicates NRDC's constitutional right to due process.   *E.g.*, *Nat'l Council of Resistance v. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001) (reiterating that rights to "notice and hearing" are part of "the fundamental norm of due process clause jurisprudence"); *see also Stinson v. United States*, 508 U.S. 36, 45 (1993) (no deference to an agency's interpretation of its own regulation where the interpretation" 'violate[s] the Constitution or a federal statute").

for a hearing on those precise issues, because the Commission has a *different* regulatory vehicle for such situations; where one or more aspects of the Commission's regulatory scheme preclude an applicant's right to a hearing, the applicant may seek a "waiver" of those regulations.   Waiver Decision at 13-16 (citing 10 C.F.R. § 2.335(b)).   Under the waiver scheme, regulations barring a hearing may be waived, and a hearing permitted, where "special circumstances with respect to the subject matter of the particular proceeding are such that the application of the rule or regulation (or a provision of it) would not serve the purposes for which the rule or regulation was adopted."   10 C.F.R. § 2.335(b) (Add.-55).

As noted, *see supra* at 19-22, although NRDC, at the Commission's invitation, formally requested a waiver of the regulations the Commission interpreted to otherwise preclude NRDC from a hearing on SAMA contentions, the Commission *denied* the waiver request.   Waiver Denial (JA   ).   According to the Commission, the waiver regulation requires a showing that the matter sought to be considered is "unique" to the facility, which, in the Commission's view, bars consideration of any matter that *could* come up for another facility.   *Id.* at 17-23. Thus, because the Commission concluded that all of the issues NRDC sought to raise could apply to other facilities in the future, the agency denied the waiver request.   *Id.*

45

If the Court agrees with the Commission that the waiver regulation is the appropriate vehicle for NRDC to pursue SAMA contentions, this aspect of the Commission ruling must be reversed, and the Commission should be ordered to grant a waiver.   NRDC satisfies the waiver regulation, and any application of the regulatory scheme to require a waiver but deny NRDC's request for one here would be inconsistent with NRDC's rights to a hearing under the AEA, the APA, and the NEPA scheme.   *E.g.*, *USC I*, 735 F.2d at 1438.

### 1.     NRDC Satisfies The Criteria For A Waiver.

Nothing in the waiver regulation – providing for a regulatory waiver where "special circumstances with respect to the subject matter of the particular proceeding are such that the application of the rule or regulation (or a provision of it) would not serve the purposes for which the rule or regulation was adopted," 10 C.F.R. § 2.335(b) – requires the issue to be "unique" to the facility at issue.   Rather, the Commission has inserted that requirement into the regulation through a series of Commission rulings, Waiver Denial at 9 (citing NRC precedents).[17]

---

[17]     Indeed, in amending the regulations in 2012, the Commission *rejected* a request for the agency to expressly incorporate the uniqueness requirement into the regulations.   77 Fed. Reg. 46,562, 46,567 (2012).   Moreover, while the Commission may be entitled to some deference for its view of its own regulatory requirements, no deference is due where, as here, the result is to delimit the scope of this Court's jurisdiction.   *See supra* at 32 (citing cases).

Applying the plain language of the regulation, NRDC is entitled to a waiver if one is necessary to obtain a hearing.   The "special circumstances" here are that, as the Commission recognizes, NRDC has "identified information that *bears consideration* in [NRC's] environmental review of Exelon's application" for a renewed license at Limerick.   Waiver Denial at 22 (emphasis added).   Indeed, the Commission stated unequivocally "NRDC *may challenge the adequacy of the new information* [on SAMAs] provided in the Limerick Environmental Report." Waiver Decision at 13 (emphasis added).   In light of these findings by the Commission, NRDC has certainly shown there are "special circumstances" regarding the Limerick relicensing that warrant a hearing, irrespective of other regulatory restrictions.

Moreover, it certainly would not "serve the purposes for which" the Commission adopted its SAMA-related regulations, 10 C.F.R. § 2.335(b), to, on the one hand, conclude that the Commission must consider new and significant SAMA-related information during relicensing while, at the same time, preclude NRDC from a *hearing* on that consideration.   Indeed, the regulations on which the Commission relies *do not speak to an applicant's entitlement to a hearing at all*. Rather, they simply address the scope of *analysis* related to SAMAs required in the relicensing process.   *See* 10 C.F.R. § 51.53(c)(3)(ii)(L); *id.* App. B, Table B-1

47

(providing, as to "[s]evere accidents," "alternatives to mitigate severe accidents must be considered for all plants that have not considered such alternatives").

Accordingly, given the Commission's position that new and significant information related to SAMAs must be considered, it would not be consistent with the purpose of the regulation to deny NRDC a right to a hearing.   Thus, if the regulations somehow bar NRDC's right to a hearing, as the Commission asserts, they must be waived.

### 2. The Commission Erred In Concluding That NRDC's Waiver Request Was Not Sufficiently "Unique" To The Limerick Facility.

NRDC would also be entitled to a waiver under the Commission's own judicially-created waiver standards, requiring an applicant to demonstrate the issue sought to be raised is "unique" to Limerick.   That standard – embodied in what is known as the "*Millstone* factors" – requires that the applicable "special circumstances" be "unique to the facility rather than common to a large class of facilities."   Waiver Denial at 9 (quoting *Dominion Nuclear Connecticut, Inc.* (Millstone Nuclear Power Station, Units 2 and 3), CLI-05-24, 62 N.R.C. 551, 559-60 (2005) ("*Millstone*")).   According to the Commission, where a challenge applies to many facilities, "the rulemaking process, as opposed to a site-specific

48

licensing proceeding, is the appropriate venue" to address the issue.    Waiver Denial at 20.

The Commission concluded that NRDC could not meet this standard for SAMA contentions.    Rather, the Commission claimed new and significant information related to SAMAs could not be unique because similar arguments *could* be made in the future for other plants.    Waiver Denial at 18-20; *id.* at 21 ("Given that similar updated information *could* be used for other plants that qualify for the SAMA-analysis exception, there is nothing unique about the information that NRDC identifies to justify waiving the rule for this particular adjudicatory proceeding.") (emphasis added).[18]

Of course, however, *any* issue presently unique to Limerick "could" come up at another plant in the future. Thus, requiring an applicant to demonstrate that the

---

[18]    The Commission's ruling also suggests that NRDC failed to prove its Contentions.    Waiver Denial at 18-21.    As noted, however, *see supra* at 22 n.9, this discussion was only in connection with whether NRDC had demonstrated the issues are unique; to date the Commission has not considered whether NRDC has satisfied the threshold contention eligibility criteria.    Moreover, it is well-established that an agency may not dismiss a NEPA issue on the grounds that a party must *prove* the environmental impact at the outset, which is the very purpose of the agency's NEPA obligations.    *E.g.*, *Am. Bird Conservancy, Inc. v. FCC*, 516 F.3d 1027, 1033 (D.C. Cir. 2008) ("[T]he basic thrust of the agency's responsibilities under NEPA is to predict the environmental effects of a proposed action before the action is taken and those effects fully known" and to require a "precondition of certainty before initiating NEPA procedures would jeopardize NEPA's purpose to ensure that agencies consider environmental impacts before they act rather than wait until it is too late") (citations omitted).

issue could *never* arise at another plant is functionally the same as concluding that a waiver may *never be granted*.

The Commission's approach is also inconsistent with both the Commission's own standard for a "unique" issue, and the Third Circuit's earlier ruling mandating a SAMA analysis be conducted as part of Limerick's original licensing process. *Limerick Ecology*, 869 F.2d at 738-39.   As noted, this *Millstone* factor excludes issues "common to a large class of facilities," because the Commission has found such issues more suitable to rulemaking.   *Millstone*, 62 N.R.C. at 559-60. However, the Commission did not suggest – nor could it – that NRDC had raised issues common to many facilities.   To the contrary, the agency simply said aspects of the issues NRDC raised *might* apply to certain other facilities in the future. Waiver Denial at 19-22.   This approach subverts the agency's own standard for allowing regulations to be waived where an applicant seeks a hearing on matters which, at the time the application is submitted, apply to that particular facility rather than "a large class of facilities."   *Id.* at 9.   In short, had the agency's own waiver standard been faithfully applied the waiver would have been granted.[19]

---

19       Although the Commission did not reach them, NRDC also satisfied the other *Millstone* factors.   *Compare* Waiver Denial at 9 (listing other factors) *with* Waiver Petition (JA    ) at 14-28 (detailing NRDC's satisfaction of all standards).

50

The court's ruling in *Limerick Ecology* also compels this result.   As noted, *see supra* at 14-15, in that case the Commission had similarly declined to consider SAMAs for Limerick on the grounds there were "no special or unique circumstances about the Limerick site" that warranted their consideration on a site-specific basis. *Limerick Ecology*, 869 F.2d at 731-32.   The court, however, rejected this argument, explaining that the kind of risks addressed in a SAMA will "vary tremendously," because "potential consequences will largely be the product of the location of the plant" – *a variable of particular import for Limerick itself, "built near densely populated areas*." *Id.* at 738 (emphasis added); *see also Phila. Elec. Co.*, 23 N.R.C. at 128-29 (Commissioner Asseltine's dissent before the Commission, explaining, "particularly at high-population sites, such as Limerick and Indian Point, consideration should be given to additional accident prevention and mitigation measures because of the uncertainties associated with estimating risk and because of the high cost to society should a serious accident occur at such a site"). Accordingly, it flies in the face of the court's ruling in *Limerick Ecology* for the Commission to refuse to allow a hearing on new and significant SAMA-related information on the grounds that NRDC has not – and presumably cannot – identify new and significant information that would only be applicable to Limerick.

51

Thus, if a waiver is necessary here, even under the Commission's *own* standard for granting a waiver, NRDC is entitled to a waiver of the regulations that the Commission interprets to bar NRDC from otherwise obtaining a hearing on new and significant information concerning SAMAs for the Limerick relicensing process.

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests the Court to grant this Petition for Review, and direct the Commission to provide NRDC with a hearing on admissible SAMA contentions.

                                   Respectfully submitted,

                                   */s/ Howard M. Crystal*

Geoffrey H. Fettus                 Howard M. Crystal
Natural Resources Defense Council  Eric R. Glitzenstein
1152 15th Street, NW, Suite 300    MEYER GLITZENSTEIN & CRYSTAL
Washington, D.C. 20005             1601 Connecticut Ave., N.W., Suite 700
(202) 289-2371                     Washington, D.C.   20009
                                   (202) 588-5206
                                   (202) 588-5049 (facsimile)

**CERTIFICATE OF COMPLIANCE**
**PURSUANT TO FED. R. APP. P. 32(a)(7)(C)**

I hereby certify that the foregoing Initial Opening Brief for Petitioner Natural

Resources Defense Council, Inc. contains 11,789 words excluding the parts of the

brief exempted by the Federal Appellate and Circuit Rules.


*/s/ Howard M. Crystal*
Howard M. Crystal

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2014, undersigned counsel for Petitioner

Natural Resources Defense Council, Inc. filed the foregoing Initial Opening Brief

For Petitioners, and Addendum, with the U.S. Court of Appeals for the District of

Columbia Circuit by filing the same with the Court's CM/ECF filing system.  The

following counsel will be served through this filing:

Bob Rader
Andrew Averbach
U.S. Nuclear Regulatory Commission
Office of the General Counsel
Division of Legal Counsel
Mailstop O-15 D21
Rockville, MD 20852

John E. Arbab, Esq.
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7415
Washington, DC 20044

Counsel for Respondents

Brad Fagg
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004

Counsel for Intervenor

*/s/ Howard M. Crystal*
Howard M. Crystal
